Call our next case, CrystalByrdVersusAaron'sInc. You don't have much to cry over, do you? Yeah, yeah, for sure. Good morning, Your Honors. My name is Fred Launer, with the law firm of Levin, Fishbine, Sedron, and Berman. I'm here on behalf of the appellants, Crystal and Brian Byrd, the representative plaintiffs of the class action. I'd like to reserve three minutes for rebuttal, if I may. That's granted. So the sole issue presented by this appeal is whether plaintiff's submission of the defendant's records, which identify with computer precision the identity of each owner lessee of an Aaron's computer that was spied upon by the activation of detective mode, was a reliable and administratively feasible method to ascertain both the lessee owner of the computer and their household members. Mr. Launery, which class definition are you advocating on appeal satisfies ascertainability? Are we focusing just on those that were raising your reply? Yes. Okay. The revised class definition. The reply brief? Yes, sir. Before the district court? Yes, sir. Right. It certainly is no secret and certainly known to counsel for the parties in this case that ascertainability has become somewhat de rigueur among many in the class action field and probably no court has had more to say about ascertainability than this court has. I'm not so sure it has percolated as well down to some of the district courts and district judges. And I'm wondering if it seems to plaintiffs here that the district court, both the magistrate and the district judge in approving the magistrate's R&R, did not perhaps conflate class definition and ascertainability in its analysis, which is contrary to how you said from the start in Marcus this needs to be looked at. Well, you can go back even further to your opinion in Wachtel, Your Honor. I mean, when Rule 23 was amended in 2003 and we had this change to Rule 23C, there were clear delineations about the demarcations between class definitions and the claims. And you made that point. And that did not happen in Wachtel at the district court level. Exactly. So now what we have, and it may have been an issue with regard to how this case evolved procedurally, but irrespective of that, the court had before it a narrowing of claims. There were four claims in the complaint, and it narrowed down just to the ECPA claim. Yeah, there are no state law claims anymore in this. There's no invasion of privacy. It's just a federal claim. Along with whatever means a conspiracy claim as well as it pertains to the federal statutory claim. The conspiracy claim was dismissed, Your Honor, by Judge Bassoon. As to the federal statute as well? Judge Bassoon, in her – that was not my understanding, but I – She issued two orders. On the motions to dismiss, she dismissed the conspiracy claim. So as the case came up, and I understand your confusion, I had it myself. As the case came up to the district court, it had an ECPA claim and a conspiracy claim in Judge Baxter's R&R. But when Judge Bassoon ruled on the motions to dismiss separately, she dismissed the conspiracy claim. Let me ask you a question. This case is not like Sullivan, where the antitrust claim of De Beers and the Diamonds, where necessarily purchase – anybody who was a purchaser was harmed by what they did with the price fixing. So everybody was harmed. Isn't the class here that includes some people who may not have been harmed necessarily over-inclusive? I mean, the class says, okay, everybody in the house, and we'll get to what household member means. But everybody in the house. But we don't know whose information was taken, do we? Well, we actually do know whose information was taken because it's Exhibit B to Ms. Hirsch's supplemental declaration, which is in the record, and I can give you a cite for that. But the point here is that there's a hard drive in the district court clerk's office that has every single captured spying session. Every single spying session. Pictures of people? Yes. Pictures of people. In every instance, it's photographs? In every instance? Was that the question? I don't believe in every instance. So you know if somebody is communicating something? Yeah, but in every instance, there is a packet of information taken from the computer that the person is operating, shipped to DesignerWare's server in Erie, shipped to Atlanta, where Aaron's corporate server is, and then shipped to wherever the franchisee is. Couldn't the class definition be whose information was intercepted? That was originally our class definition, Your Honor. And what happened was the defendants argued that we were articulating a fail-safe class, where you were imputing the merits into the claim. So we're in a push-me-push-you, heads-I-win-tails-you-lose situation. We were trying to meet the demands that we understood the law to be, which is that you must present an objective class definition that is capable of ascertaining class members. Even if we agree with you that Carrera doesn't incorporate the class members being intercepted or surreptitiously monitored, we've got Wright, we've got Kemblesville and Rowe that indicate that the class definition has to have some relation to the defendant's activities. And don't we have here a definition that includes class members who simply live in the house of the person who owned or leased the computer? That's irrespective of whether there's an actual connection to those activities. I think that's a false argument, Your Honor, and I'll tell you why. The definition that we presented has a relationship to the merits. Definition of household members? I'm sorry. When you said the definition we presented, definition of what? Of the class. All persons who own or leased or purchased. All persons on whose computer detective mode was installed and activated. That directly relates to the ECPA claim because the only thing that's going to happen once detective mode is activated is that it's going to, every two minutes, start spying on you and start shipping out information, spy packets to the server in Erie down to Aaron's corporate server where it sends Aaron's emails. So there's an email of every spying session. And the activation of detective mode directly relates to the claims that are here. I think Judge Krause's question is you've got household members. Let's say there are ten household members and there is an assumption or a presumption in here that if there's a computer in the house, everybody in the house uses it and has been harmed, if you will. And that's not necessarily the case. Why doesn't that make this more like Oceana where you've got a countless number of supposed class members who in fact were not and in some cases could not have been intercepted? Well, that's the whole point that we are making in our brief. This is not like Oceana which is you had millions of people that drink Coca-Cola and not everyone. You're saying the relative universe here. We have a universe of 895 discrete computers. Although you haven't defined household members. And we don't know the number of household members. You do not know the number of household members. Why do we need to know the number of household members at this stage? Well, that's another point, Your Honor. If you think about it. We're at the class definition stage with the certification stage. In Carrera, or I think it's Carrera, the court said, or maybe it was Marcus, the court said for numerosity you don't even need to know how many people you are. Why is the ascertainability requirement even more stringent than the express requirement of Rule 23-A-1? Don't you have to have defined household members? We define classhold members to meet the ordinary understanding. And we provided that to the district court. People who live in their household. Counsel, you provided a number of different definitions below of household members, which is why, in part, why the district court concluded that it wasn't ascertainable. I understand on appeal you're now pressing the Census Bureau definition, but why was it error on the part of the district court to find it was not ascertainable, given the many definitions presented below? We had two chances to argue the class certification motion in the district court. The magistrate judge precluded it, and the district court judge didn't have one either. So we never had an opportunity to actually present our arguments to the district court except in our briefing. So it seems to me that at a hearing you can present your evidence, you can articulate your argument, and we never had that opportunity. But you would say adopting the Census Bureau definition, they are easily ascertainable by comparison with public records, I assume. And, Your Honor, just two weeks ago in the Shelton case, which we just handed over. Shelton is a B-2 case. It's a B-2 case. You have a B-2 claim here as well, don't you? We do have a B-2 claim, yes, sir. But in that case, the court, Judge McKee wrote the opinion, Judge Smith, you were on the panel. I sure was. The court said common sense tells you that the Bureau of Prisons knows who its inmates are. Common sense, I think, tells you you know who your household members are. And it's easy to prove who lives at the address of the lessee. They'll have the same address as the lessee. The practical problem that is so often unspoken in these cases is when that determination is made. Yes, sir. And if I could return to the doctrinal here, it has struck me that the magistrate judge and, as a consequence of the district court in signing off on the R&R, also seemed to conflate ascertainability with predominance. And that has played out in a few of our other cases here. Judge Rendell's opinion in Grand Towson? Absolutely. Yeah, it has. Do you think that's what occurred here before the district court? We don't know what the magistrate judge was thinking because she stopped at ascertainability. She could have gone on and explained her opinion that we didn't meet the B3 predominance component and it's clear from the case law in this court that the two were sort of intertwined. But we don't know where she is on that because she stopped. And that's why the only issue here is ascertainability. And it strikes me that this case, yes, you can quibble with the class definition. I think that we provided an objective class definition that describes the parameters of the class, and you can because every e-mail is part of the record. You can say there is a person. We can identify every single person. You would argue if this class isn't ascertainable, there is no class that is. Your Honor, I have said that to my co-counsel. Thank you for saying it because I didn't want to say it. I'm just saying that's what you would say. I've been doing this for a long time, and I thought this was a perfect class action, the paradigm class action. And I lose my ascertainability. I'm not entirely surprised by your contention in that regard. But ascertainability is necessarily forward-looking as a concept, isn't it? Carrera even says that you can ascertain, not that you have ascertained. That's what I'm saying. Ascertainability as opposed to ascertaining is necessarily forward-looking because the inherent nature of this analysis is that we are looking eventually toward distribution. If you're successful, it's going to be distribution pursuant to a settlement or to pay out on a judgment, right? Yes, sir. So what we do presently at certification is to assure the court and the defendant or defendants that there is a manageable process available that will allow ultimate ascertainment of class members. But all that's required at the time of certification is that you show that it can be done reasonably, right? That's footnote two of Carrera, and just recently. And that has nothing to do with predominance. I won't say nothing, but it certainly has. Predominance is an issue for trial, isn't it? Yes, sir. I mean, you've got it. That would be the reaction, show it for purposes of certification, but you're eventually, if you go to trial, going to have to make that predominance at trial as well, right? Yes, sir. Ascertainability is not an issue for trial purposes. It should be a very threshold. It is a threshold issue. And the B3 component or analysis is what will be tried. So ascertainability considers, you know, how are we going to be able to get the people in the courtroom, give notice, meet all the 23C standards. And then the B3 component is the predominance component, and that is, can I manage this trial? How are we going to do it? And in this case, we even have federal model jury instructions that we presented to the district court. This is a federal case. It's a federal cause of action. All right, we'll hear from you. Your Honor, my time's up. It's been up. But thank you very much for your patience. Thank you. Thank you. Good morning, Your Honors. Good morning. May it please the Court, my name is Christy Brown. I'm with the law firm of Alston & Byrd in Atlanta, and I'm here on behalf of the appellee, Ahrens, Inc. Seated with me at counsel's table is Mr. Williott, who represents the co-appellee Aspenway Enterprises. We have divided our time so that I have 12 of the minutes for argument, and he has three. All right. Your Honor, to jump right in, I hear the Court obviously asking a lot of questions about ascertainability, and Judge Rendell, I think you started right out by saying, but don't we know, we don't know whose information was taken here. And Mr. Longer was talking about photographs and things like that. But the point is that this class is drafted so broadly that it unquestionably encompasses countless people who don't have a claim. But we have, I mean, it is ascertainable, is it not? We don't need to know who's at the certification stage. We don't need to identify class members at the certification stage. We need to know that eventually we will be able to identify the who, who are members of that class. By a reliable methodology. In an administratively feasible way. That's correct. As compared to, we have no idea who bought their aspirin, and there's just no records. It's a very different situation. Your Honor, I don't think it is, because we also don't have any way of knowing whose information was captured here. So let's start with the process. Well, it's certainly different from Carrera in that you've got a named plaintiff here who actually leased the equipment at issue, whereby the named plaintiff in Carrera couldn't even identify the product. That was a fundamental problem. Well, the named plaintiff here can, in fact, establish that they leased a computer. That is correct. But let's talk about another aspect of this class definition that we haven't talked about yet. The class definition is drafted to include as an express requirement that the only people who are included in either of these classes are people who did not consent to the use of detective mode. That is an express element of both of these classes. The declaration that... That has not stopped classes from being certified where the statutes have that provision, has it? Your Honor, there are certainly cases where there could be a basis for assuming that there was no consent. Give me a case in the Third Circuit where we've so held. Where you've held that a class could be certified even though there was a consent element? Yes. I think the Landsberg decision. There's a TCPA case where the court held, look, the defendant was using an old fax list that was two years old, and we can assume that nobody consented to its use. This is so different here. The only evidence that is in the record on consent are the affidavits of franchisees who indicated that they did obtain consent before activating detective mode. Isn't that criterion, though, an objective one? I mean, at the ascertainability stage, aren't we looking for objective criteria and then a feasible mechanism for that to be actually determined at a later stage? Well, the question is how could that be done through common proof in an administratively feasible way, and the appellants have never told us. They have never advanced a plan for how they would deal with the lack of consent other than to ask the court to infer a lack of consent. But on this record where the evidence shows that some customers did consent, there's no basis for inferring a lack of consent. Well, but you said the records show that some did consent, and isn't that the way consent would be, it would be in a document? No, it is not, Your Honor. On this record, if you look at the declarations that are in the record, some of the franchisees orally obtained consent. Here's how it would work. A person who had leased a computer, they're a member of this class on this definition, their computer was stolen. They called the franchisee and they said, would you please activate detective mode to try to find my computer? It is only in that instance that the franchisee activated detective mode. There are two franchisee declarations in the record that indicate that's how they used the software. In that case, there wouldn't necessarily be a contractual agenda that established consent, but there would be consent nonetheless. Also, Your Honor, the idea that because we have these detective mode documents, we have computer precision as to who's included in the class is completely not correct. These are portable laptop computers. It is not uncommon for someone to lease a laptop computer, so they're a member of the class, and drop it off at their child's dorm room so they can use it during their college day. Let me ask you a question about the consent that you. Sure. Is the consent to look at the private information, is that the consent? Or is the consent to install? It's to activate the detective mode. Activate that mode. But does that carry with it a knowledge that, oh, and guess what? When you activate it, we're going to look at your stuff, as compared to you activate it to find it or to do something else. Your Honor, I mean, I think the point is that we're left here speculating as to exactly what all of the consents could be, because what the record shows is there was a broad. I don't think so. If you're saying consent is a barrier, I would think you would, you know, be pretty specific as to what consent has been given. Well, certainly, but what we're dealing with here is it was given in individualized ways. I can't imagine that someone said, oh, and by the way, please intercept my e-mails and take pictures of me on my computer. Your Honor, here's what they might say. My computer has been stolen. Please activate detective mode. When we do that, we're going to be able to look at whatever's going on on your computer. We could even take webcam pictures. You're going to be able to. I don't care. We're going to. I don't care. My computer has been stolen. Please activate detective mode. How would those folks even be members of the class the way you defined it? Well, this is the issue that wouldn't be, right? In that case, the person who would be the member of the class is the purchaser of the computer who had detective mode activated. Their information would never be obtained, but they would be a member of this class. The thief's information would be obtained, but they would not be a member of this class. That's the problem with the way the class definition is drafted. But those are folks who are not going to be pursuing liability against your client. No, but this means let's think about how this would proceed if the class were to be certified and we were to go to trial. If there was a finding that these named plaintiffs established a violation of the ECPA, if you look at the Dukes v. Walmart case, when you're resolving common issues, they're supposed to resolve the common issues of the class. So when we resolve that the Byrds have had their ECPA violation, which I don't think they can prove that, but if they could, you're then giving a claim to everybody who leaves the purchasing period. You're arguing predominance. We're well beyond ascertainability now. You're arguing predominance with a lack of it. Well, I think, Your Honor, the issue is that. . . I'm not sitting here saying they may not have huge predominance problems if this case goes back, but we have confronted, we are confronting an issue where a district court does not, in my view, seem to have understood the difference between ascertainability and predominance and confused the two in its analysis. Your Honor, I think the court made clear in Grindolfsky that there's a connection between predominance and ascertainability, and in that case the court had conflated the requirements, and this court nonetheless affirmed on a finding of predominance. Well, let's say we have, you know, ten people in a row, and we need to find out whether we can ascertain if they are members of this class. Yes. We can do that, can't we? No, Your Honor, I don't think we can. How come? Aren't there records of who leased and purchased, and can it be shown who's a household member? Aren't they ascertainable with proof that's reliable in a way that's not like someone who bought. . . Oh, yeah, I bought bear aspirin. I bought bear aspirin. I threw it away. I don't have a receipt, don't have a bottle, but I bought bear aspirin. We can definitely say any given person, whether they're in this class or not. Can we not? You cannot because of the requirement that the plaintiff's drafted into the class definition that it had to be without consent. That is an issue that has to be confronted with the plaintiff's under Courera. They have to come forward with a reliable and administratively feasible way for identifying class members. They have not come forward with a way for dealing with consent, and Judge Rendell, you've said, you know, aren't there documents out there we could look at? Well, they've certainly never made that case. You know, they had seven depositions of my client. We produced 400,000 pages of documents. Well, have you shown that consent is such an issue that it should not be, this class should not be certified? Yes. Did you show the district court how many consents you have? How many consents do you have? We didn't show how many consents we have, but we showed that there were practices of obtaining consent, and that was certainly a predominant argument that we made. How many written consents do you have? I don't have any way of knowing that. Doesn't the issue of consent really go to eligibility for relief? Those are merits questions that get determined at a later stage. Well, it's crafted into their class definition, so it's also a criteria for class membership. But to the concern of predominance that you know. I don't want Judge Krause's question to slip by here or for you to elide over it, because I take your question to be suggesting, consistent with what I tried to suggest earlier, that the temporal stages here are important. Yes. All that is necessary in certification, we know from our ascertainability jurisprudence, is that ascertainability be shown, not ascertainment of individual class members. Isn't that a function of the administrative process downstream? After you've had a settlement or after you've had a verdict, that's when people come forward and they demonstrate through the administrative process with whatever quantum of proof is deemed necessary. Probably, in most cases, it's going to be pursuant to the terms of the settlement agreement. Whether they fall within the class and are therefore entitled to a payout of some kind or not. Isn't that how it works? What would work in this case? I don't think that is how it works exactly, because I think there's a burden with respect to showing not who the class members are, but they can be identified in an administratively feasible way. Sure, then that's what the cases say. I think when you have an overbroad class like this one, to allow a class that is so broad that it's not tethered to the factual requirements for a claim. But that's a definitional question. Isn't that a 23C issue? It can be a 23C issue. It can be a predominance issue. In fact, the district court was wrestling with the over breadth of this class and the fact that it created individualized issues. That's why you've got a couple of definitions of the class along the way. That's why we've got a couple of definitions of the class along the way, but it's also why in her order, on page 9 of her order, she makes a finding that is in essence a predominance finding. She never, in fact, even referred to the consents, did she? That never fit here in the R&R or certainly in the approval by the district court. The issues were before the court, but that's not what she focused on. She found other problems. So on page 9 of her opinion, she's talking about the elements of an eCPA claim, and what she says is that these elements are going to require what she called intense factual inquiry. This is a predominance finding, even if it doesn't have a label ahead of it that says predominance. She says, not all information gathered will constitute an interception of the contents of an electronic communication. And so determining whether the information constitutes the interception of the contents of a communication and whose information on a computer with multiple users has been secretly accessed and gathers are exactly the kind of intense factual inquiries that Marcus dictates be avoided by the trial court, since they will require inquiry into the merits of an individual's claim. The reason I read that to you, Your Honors, is to say her concern was one of predominance. She wrapped it around ascertainability because those requirements are in some ways related, and I think district courts have conflated them. You're asking us to affirm on an alternative ground of lack of predominance? Yes, Your Honor. I think you can. This is not an abusive discretion. The appellants have never challenged it as such. Could we send the case back down and ask the court to slap a label on it that says this is actually a predominance finding? I don't think that's the best use of judicial resources. Well, that's a little facile in suggesting that all that would be done is slapping a different crime on it, isn't it? Of course, Your Honor. But, I mean, she has made the essential findings. She has looked at the elements of the claim, and she has said they are intensely factual individualized. Predominance here is what the defendants did, correct? Predominance is what the defendants did. I'm not following. Well, they looked at things. They installed this. They activated it. They looked at all this information. Well, the issue is that to establish a violation of the HCPA, it's not just looking at information. You have to look at the contents of the communication. You have to intercept them when they're in transmission. There was expert evidence before the court below that this can't be done on a common basis. Do you agree that remand is necessary in any event in light of Shelton since they do bring a B-2 claim? No, Your Honor, I don't agree with that. The appellants assert a claim on behalf of both of these classes under B-2 and B-3, the same claims for both of the classes. Here they're seeking individualized monetary relief. They're seeking statutory damages of $10,000 per violation per class member, and that is not a case where money damages are incidental to the relief that's being sought, so there can never be a B-2 class here. In fact, the plaintiffs haven't really even pursued it below. Although they mentioned it in their motion for class certification, all of the briefing has focused on Rule 23B-3. I see that my time is out. Thank you. Thank you, Your Honors. Good morning. May it please the Court. I'm Tony Williott from the Marshall Denningy Firm on behalf of Aspen Way Enterprises. I ceded most of my time to Ms. Brown because the issues as to Aspen Way and errands are identical on the class certification issue, and certainly they've been well covered in errands, briefings, and argument today. We adopt all of those arguments. I'd like to focus the Court's attention in my short time on the evolution of the decision that Judge Baxter and Judge Bassoon made and how we got to that point because, as you know from the papers, the original class definitions that were proposed by the plaintiffs were much different than the class definition we ended up with ultimately and the one that's before the Court today, that class definition being raised for the first time in plaintiffs' reply brief on class certification in the trial court. Defendants never even had an opportunity to brief that issue, and in Judge Baxter's defense, she was a little bit hamstrung in the sense that she was now dealing with a new class definition that really had not even been addressed by the defendants' briefings in the Court below. As a result of that, she probably did conflate to some extent predominance and ascertainability, and I think what the plaintiffs did in their latest definition of the classes is they went 180 degrees from what they had done before, seeing that they were running into opposition from the defendants on the earlier class definitions. They went all in on ascertainability without really considering the issue of certification at the expense of actual certification of the class, and so what the plaintiffs did was define a class in a way they felt was most ascertainable, but the problem is even on its face, because of the household member's issue, it is not ascertainable, and that's been discussed here already today. Counsel, you've asked us to affirm on the alternative grounds of predominance and raise substantial arguments about, under the Wiretap Act, the individualized nature of the analysis of contents, interception, and even consent, but on an interlocutory appeal, there's a narrow question that we're here to address, and even though that issue has been fully briefed by the parties, it was not addressed by the District Court, so how would it be appropriate or even useful for us to address the predominance issue here? I think there was a case in December that said that you can affirm on other grounds. It's the case in the TD Ameritrade case, but beyond that, I think we also need to look at the overbreath issue that Ms. Brown talked about as well, and I want to put this in practical terms, because what we're dealing with is close to 200,000 pieces of paper, and every one of those pieces, screenshots in particular, and we all have computers, a screenshot is an actual replica of what is on the screen at any given moment. How many people are we talking about? Well, we don't know, Your Honor. The problem with the definition of the class is it's both overbroad. No, no, no, wait a minute. You don't need to know. You need to have a class definition that uses objective terms. That you can figure it out at some point. You don't need to know how many. No, and I'm not suggesting we need to know how many. Well, you said that's one of the problems. I don't see why it's a problem. It's not a problem at all. It's certainly not a legal problem. No, I was talking about the overbreath, actually, Your Honor. Well, that's also an interesting thing and potentially a problem. I've never heard of overbreath in connection with a class definition, not within this circuit. It sounds like a First Amendment jurisprudential term. How do you have an overly broad definition? Because this class, as defined, would include countless people who have no possible potential for a claim. Doesn't that present, perhaps, a predominance issue? It probably does spill over into predominance, Your Honor. Because the way this will play out at a trial is that we have to look at each piece of paper, every screenshot. For instance, there's a very good example here of the Peterson case that has been filed down in Atlanta, which is actually a lessee who used a computer in a law firm. And so some of the screenshots in that case are confidential communications from clients to the law firm and vice versa. This definition does not allow for those clients whose confidential information is contained in those screenshots to be a part of this class. And, therefore, this class definition would be under-inclusive in not including people like that. For instance, Well, there's another term, under-inclusive. Where does that appear in our jurisprudence?  I don't think there is. In fact, I'm pretty certain there isn't. Why can't a plaintiff define a class that meets the requirements of 23C and have it be a narrow class? What's wrong with that? Well, because Are you suggesting defendants want big classes because you want to be really generous with them and pay out large sums? No, but I'm suggesting the defendants want the protections that would be afforded by an appropriately defined class. But that's a matter of class definition, isn't it? I'm simply trying to be precise about the terminology here, and we've got big problems out there in terms of the use of ascertainability conceptually and its confusion, at the very least, with predominance. And the introduction of terms like under-inclusive and over-inclusive seem to me, at least, to only confuse the arguments. I've used my time up. Thank you very much. I guess I used up your time, too. Thank you. Rebuttal, Mr. Langer? Mr. Langer, can you address at the outset, even if we ultimately agree on the ascertainability point, why, as a matter of judicial economy, we shouldn't reach the question of predominance, which both parties have fully briefed for us? Well, I'm going to rely on the NFL opinion that just came out, Your Honor, and you have no findings by the district court. We have no idea how she will rule on this. You will be in advance of the district court in terms of making factual findings, and this is a court that's designed to look forever as opposed to actually making a record and so on. And so I would submit to Your Honor that it would be judicially inappropriate, based upon Judge Smith's opinion in the NFL case. Well, I mean, isn't it? Wouldn't such a rule, I don't know what, to be very candid, I don't know what NFL does to help you here, but wouldn't taking that action be entirely contrary to the long line of certification-related cases to which this court has contributed a great deal, requiring rigorous analysis by the district court, which we have lacking here as to predominance? Yeah. The heading in our reply brief is this is not an EC Prius court. You need to have a district court make the rigorous analysis that's required by Dukes and all of the others. Well, from Falcone and the Supreme Court forward, rigorous analysis has become more and more rigorous. As plaintiff's counsel, I'm sure. Yes, and I can tell you that's exactly what we've got here, Your Honor. But don't you agree that when the question is one of content, whether something constitutes a substance of a communication or simply just a snapshot of what was on someone's computer or a photo that was taken from a computer, for example, every one of those images, the data that was gathered, has to be analyzed for whether it fits the definition of a violation under the Wiretap Act. How can that not on its face present insurmountable predominance problems? So the nature of the class being what it is, what we would present is almost two separate issues. One would be generic liability, and then you can have specific liability. You see this in a lot of medical cases. So the generic liability is, is detective mode capable of intercepting electronic communication in violation of the ECPA? Micah Sher, our expert, says it is, and I intend to prove that. I think I can prove that. He will show that things like, and this is going to excite some of your clerks, Your Honor, but in the under seal record at JA 1073, you have photographs like this that are captured. Now, the person is typing, I'm okay, or things like that. That was instantly grabbed, and that was an electronic communication that was sent across the airwaves or the Internet. But you're going to have to show, as to every person, you're going to have to show lots of instant grabs to find out who is in it. Every single communication has to be evaluated, right, under the ECPA? Under the generic liability concept, no. Then what the court can do is, and we could do it a number of ways, you're getting into actual trial now, is how do you do this? We could show generic liability. We could show specific liability. We could do it in a number of instances where it is obvious. You would concede, wouldn't you, and this has nothing to do with ascertainability, that each member of the class who falls within the class definition will be uniquely impacted by the specific invasion that has allegedly occurred here. Isn't that the case in every class, actually? No, no, not at all, not at all. Well, maybe I misunderstood the question, Your Honor. I don't know that I understood your question. The specific invasions that have been alleged here, vis-a-vis not only a named plaintiff, but presumably the members of the class that you represent, will be impacted, each of them, in a unique way, merely by virtue of the type of court, if you will, that underlies this case. Pictures being taken of them, different invasions. These are hardly fungible claims, I'm suggesting. Well, under the ECPA, they are fungible because the ECPA gives statutory damages. It's a uniform damage. No matter what the content of the interception is. Yeah, we could go and... That's not the case. Yeah, but you also could, not necessarily you, every putative, every member of the putative class, could file individual claims, seek individual damages, and on a state-by-state basis, have pendent state court claims for which they could claim specific damage as well, couldn't they? I mean, that's an alternative to the class device here, right? I'm going to answer your question yes, because... It is yes. It's obvious. But let me give a further explanation. Most of these people have no idea that this activity has taken place. They have no idea. There's a protective order in place. We asked initially that notice go out to this class so that they'd be informed that Ahrens is spying on you. And we had a lot of opposition to that. So those class members... It's not obvious, the invasion itself. So we could have individual serial individual cases, but unless we are permitted to inform people and they retain counsel, they'll never do that. And that's... Well, I don't want to get into Ahrens' litigation strategy. I had a couple of points... Mr. Rohn, I just want to go back to one of your answers, because Judge Rendell had asked you whether this was regardless of the content of that communication. You said yes. That is not the case under the WIRETAP Act. The WIRETAP Act has a very particular definition of what constitutes a communication, and that content does not include, for example, a static image, a picture from the computer, right? It has to be the actual... The communication. It has to be data. I don't have the terminology in my head, but it has to be data and the like that is transmitted over the Internet. So if I was saying yes, I was saying because I was thinking each capture. But photographs, I know that Judge McLaughlin said that it's not. I happen to think that you can have a photograph that is very communicative. And I just showed you a photograph that I think is communicative. Then that's going to be individualized. And that goes back to Judge Smith's question about whether there is, in fact, a unique injury as to each and every potential class member here, because you need to look at exactly what it was that was the picture, the interception, what it was that was sent. And that makes this, in terms of predominance, seem insurmountable, doesn't it? No. And there I think that there's a difference between damages and the liability. The liability is common. A person's individual damages, the uniqueness of their injury, from embarrassment of certain communications that are captured, that goes to a damages. And that can be dealt with separately. And there's a lot of case law to that effect, especially coming out of the Seventh Circuit. This isn't about damages. It's an element of the claim, the element of an eCPA claim. You're sure right if it's a pure damages issue. But if it's inextricably linked to the liability aspect of the case, then you may have a big predominance. So my time is up. Did you want me to? I was going to say, Your Honor, as to the consent issue, you addressed this in Lansman and Funk, and you said that it's not clear as a matter of law that differences regarding consent are sufficient to defeat class certification. It was in our reply brief. I did have one other point. With the portability of the computers, at the record JA99, it's the lease agreement that we have, and the lease agreement prohibits people from taking their computers to a different address. So I think that counsel opposite misspoke on that. And then Mr. Williott, on behalf of Aspen Way, said he didn't have an opportunity to address the revised class definitions, but they did. There was an opportunity for server applies. So, again, I don't know what to say as to that, and I think I've covered everything. So thank you very much, Your Honor. The case is well argued. We'll take it under advisement. Thank you.